**Supreme Court**

No. 2013-3-M.P.

In re Application of Floyd Edmond Webb, III.  :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

In re Application of Floyd Edmond Webb, III.  :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**PER CURIAM.**  The applicant, Floyd Edmond Webb, III, petitioned this Court for a hearing concerning the recommendation of the Supreme Court's Committee on Character and Fitness (committee) that he be denied admission to the Rhode Island bar.  Specifically, the applicant asserts that the committee abused its discretion by neither admitting him to the bar outright, nor recommending conditional admission under Article II, Rule 3(l)(2) of the Supreme Court Rules of Admission of Attorneys and Others to Practice Law.  This matter came before the Supreme Court pursuant to an order directing the applicant to show cause why the recommendation of the committee should not be adopted.  After considering the applicant's written and oral submissions, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we adopt the recommendation of the committee.

**I**

**Facts and Procedural History**

The applicant graduated from Roger Williams University School of Law in May 2008 and applied to take the bar examination that July.  At that time, applicant was interviewed by a single committee member and advised that, if he passed the examination, he would be required to appear before the full committee "due to issues of candor in both the [a]pplication and his law

- 1 -

school application * * *." In particular, because applicant admitted in his initial interview that he did not fully disclose all prior arrests and charges, nor fully identify the disposition of those arrests and charges, he was advised to supplement his application to include such disclosure. In July 2009, applicant passed the bar examination on his third attempt. The applicant then appeared before the committee on October 25, 2009, December 21, 2009, February 3, 2010, April 26, 2010, and finally, on June 1, 2010.

Despite being advised to supplement his application "to address the issues raised during the initial interview," the committee found that the amendment, which applicant filed immediately prior to the October 25 hearing, failed to address those issues. During the hearing, applicant was advised that the committee would send a written request for the additional information. The committee received additional information from applicant and scheduled a second hearing for December 21, 2009. The information provided encompassed thirteen items, including "prior arrests, traffic issues, police incident reports, and civil litigation."

In addition to two arrests in 1983 and 1998, as well as several traffic violations and incident reports, the committee focused on two confrontations applicant had with the Providence police and one confrontation with the Rhode Island state police. On November 14, 1999, applicant was charged with disorderly conduct after arguing with a Providence police officer who was controlling traffic during a road race. The applicant admitted calling the officer "a f***ing idiot." The charge, which applicant mischaracterized as "disturbing the peace," was dismissed and subsequently expunged. On June 3, 2006, while attending law school, applicant was arrested and charged with vandalism, disorderly conduct, and resisting arrest. The charges stemmed from an incident in which applicant allegedly had tied his dogs to the door handle of a bank, and when Providence police officers removed the dogs, telling applicant that he was

obstructing the entrance of the bank, applicant "had a few choice words" for the officers and the situation rapidly deteriorated. The applicant pled nolo contendere to resisting arrest, and the other charges were dismissed. That conviction later was expunged and sealed. In his application, applicant stated that he had been arrested for "disturbing [the] peace" and that the charge had been dismissed; he failed to disclose that he had pled nolo contendere to resisting arrest.

An incident involving the state police occurred on May 24, 2004. The applicant was stopped for speeding, and the incident was recorded by the state trooper's "MVR tape." Impatient with the amount of time it was taking for the trooper to return with his ticket, applicant called 9-1-1 to complain. The trooper on the scene described applicant as being "aggressive," becoming belligerent, and calling the troopers "losers."

During the December hearing, applicant disputed the accuracy of the police reports and accused the police officers of lying. The committee was unable to complete its review, and scheduled another hearing for February 3, 2009. The committee asked applicant to submit a copy of the police report about an incident on June 3, 2006. When applicant provided the requested incident report, the committee found that it contradicted his prior testimony. The applicant alleged that the report was "a complete misstatement of the facts" by the police.

The committee scheduled hearings on April 26, 2010, and June 1, 2010, to hear testimony from the police officers involved in certain of the incidents that applicant disclosed. In all, seven police officers testified during those hearings. The applicant was represented by counsel, who cross-examined the witnesses, all of whom testified that their reports were accurate. Two of the officers professed vivid recollections of the events in question. Providence police Det. Steven Gencarella, in recounting the incident on June 3, 2003 that resulted in a charge of resisting arrest,

stated that he "clearly remembered everything that happened" because "[v]ery rarely do we deal with people that act in a way that Mr. Webb acted that day, so they kind of stick out in your mind." Rhode Island State Trooper Peter Cambio remembered Mr. Webb as one of his "top five [stops;] * * * [t]he worst five that I've encountered."

At the conclusion of the hearing, applicant was questioned about the most recent police incident reports, dated May 6, 2010. The applicant was asked whether he had, in fact, used the term "loser," and applicant denied making such a statement. When asked whether the use of the term "loser" in two separate police accounts was a coincidence, he replied, "[y]es." The applicant was advised that he could respond to the police testimony or provide a written submission, which would be due by June 30, 2010. As the meeting was ending, members of the committee said they heard applicant state, "Let's get out of here. I've had enough." Moments later, applicant denied any memory of making that statement.

In July, applicant's attorney requested an enlargement of time for the filing of a post-hearing memorandum and withdrew as applicant's counsel. On July 30, 2010, applicant requested that the committee take no action on his application until he reported to the committee that he had completed counseling for anger management and conflict with authority figures. On September 6, 2010, Barbara Schweitzer, LICSW delivered a letter to the committee stating that applicant had completed counseling sessions with her and that he understood "the source of his anger, and has committed to using learned methods of containing it." The committee directed applicant to confirm whether he would be retaining new counsel, and gave him until October 29, 2010, to file any additional information.

In a letter received by the bar administrator on October 13, 2010, applicant advised the committee that he had retained new counsel. The committee met with counsel on March 7,

2011, to discuss the status of the application, and it granted his request to extend to April 18, 2011, the time to respond to the committee about the application.  No information was received from either applicant or his counsel, although, in a conversation with the chair of the committee, counsel indicated that he understood that applicant would be withdrawing his application.

On June 28, 2011, the committee received an additional Providence Incident Report concerning an incident on July 10, 2010.  On July 1, 2011, new counsel reported that he, too, had withdrawn as applicant's attorney.  After receiving a letter from the committee stating that, unless he withdrew his application by August 5, the committee would proceed with preparing its recommendation, applicant sent a letter stating that he would not be withdrawing his application and chiding his former counsel for making such a misrepresentation.  In his letter, applicant alleged that the committee failed to follow the Administrative Procedures Act, that the committee's duties were "overly broad" and "apparently allow[ed] members to be partisan," and that the committee had no rules governing conflicts, ethics, or the admissibility of evidence.  Finally, applicant accused the committee of distorting his record and using the hearing "to create a highly subjective and inaccurate reflection of [his] character and fitness."  The applicant then requested that, if necessary, the committee issue a conditional approval.

The committee received a letter dated October 4, 2011, from Stephen Bishop, a clinical psychologist, stating that he had "evaluated with Mr. Webb the specific altercations that have occurred between [Webb] and the police."  Although Dr. Bishop did not state whether he had treated applicant, he offered his "professional opinion that [Webb] can and will manage his anger effectively now and in the future and that he should be regarded as [a] potentially valuable member of the legal profession * * *."

On January 17, 2012, the committee submitted to this Court its "Recommendation of Denial to the Rhode Island Bar." The committee recommended denial on the grounds that applicant

> "failed to establish by clear and convincing evidence his moral character and fitness to practice law due to 1) his lack of candor in fully and completely disclosing required information in the filing of his application to law school and the [a]pplication seeking admission to the Rhode Island bar, [and] 2) his conduct and lack of candor before the Committee as confirmed by the testimony of other witnesses throughout the course of the meetings with the Committee."

The committee found the testimony of the police officers to be credible and applicant's testimony not to be credible. Further, the committee found that applicant displayed a lack of candor and truthfulness both in failing to fully and accurately disclose past arrests, traffic issues, and civil litigation, and in giving "false, misleading and evasive answers" about the underlying incidents. In addition, the committee found that applicant "displayed repeated issues with authority figures," and it questioned his "ability to meet his professional responsibility and obligations as a lawyer." Accordingly, the committee recommended that the application be denied.

On May 25, 2012, applicant (now pro se) filed a "[petition to show cause and request for hearing]" arguing that the committee had abused its discretion and the recommendation was not well-founded because his disclosures satisfied Rule 3, he had "[no issues with authority figures]," he did not lack candor and sincerity, and that "[admission under Roots and Rule 3(l)(2) was the correct outcome]." See In re Application of Roots, 762 A.2d 1161 (R.I. 2000). It then came to the Court's attention that applicant had been arrested on April 2, 2012, for leaving the scene of an accident. According to the arrest report, applicant was arraigned and given a court

date of May 18, 2012. Prior to his appearance before this Court applicant had not updated his bar application to include this most recent arrest.[1]

## II

## Standard of Review

"We will not overturn a recommendation of this Court's Committee on Character and Fitness * * * unless it has 'abused its discretion or its decision is clearly wrong.'" In re Roots, 762 A.2d at 1163 (quoting In re Application of Capace, 110 R.I. 254, 259, 291 A.2d 632, 634 (1972)). "We will do so, however, if 'such recommendation is not well founded.'" Id. at 1164 (quoting In re Testa, 489 A.2d 331, 334 (R.I. 1985)).

## III

## Discussion

To gain admittance to the Rhode Island bar, an applicant "shall be required to establish by clear and convincing evidence their moral character and fitness to the satisfaction of the Committee on Character and Fitness of the Supreme Court * * *." Rule 3(a). The applicant has "the burden of proving his [or] her good moral character * * *." Rule 3(f). "The failure of any applicant to answer any question * * * or to supply any documentary material requested by [the committee] * * *, shall justify a finding that the applicant has not met the burden of proving his [or] her good moral character." Id.

The committee forwarded its recommendation to this Court, finding that applicant "willfully concealed full and accurate information" requested in his applications, gave "false, misleading and evasive answers," "demonstrated a lack of candor and sincerity," and displayed

---

[1] The applicant appeared before this Court on November 19, 2012. During oral argument he acknowledged that he had not amended his application. On December 10, 2012, applicant filed an amendment to his application stating that he "entered a plea of nolo contendere with a one year filing."

"repeated issues with authority figures * * *." The applicant responds by stating that he had no willful intent to conceal information, and rather had "made a good faith interpretation" of questions that he found to be ambiguous. Further, he argues that he was never evasive or misleading. Although he admits that he "did not attempt to appease the questioner," he states that the committee can point to no false statement nor any time that he refused to answer a question. The applicant disputes the committee's finding that he lacked candor and sincerity, stating that such a finding is clearly wrong because the committee "ignored the good faith concerns [he] raised with the examination." The applicant avers that he has no issues with authority figures, and states that the committee's finding that he did have such issues was "rendered dubious" by the committee members' relationships with police officers. Finally, applicant distinguishes his case from the facts of In re Roots, stating that because his transgressions were not as serious as those in Roots, the committee was "clearly wrong" in recommending denial of his application.

The committee conducted an exhaustive investigation of the issues raised in Webb's application. It sought and received police reports and incident reports not proffered by applicant, conducted five separate hearings, and gave applicant the opportunity to cross-examine the seven police officers who testified. The applicant also was given ample opportunity both to supplement his disclosures and to offer explanations for the incidents in question. Finally, as an applicant to the Rhode Island bar, Webb is charged with knowledge of his continuing duty to report any changes to the information contained in his application, including any arrests. All applicants are required to submit a signed, notarized Section D with their bar applications. Section D states:

> "I hereby acknowledge that this application is a continuing
> application for the Rhode Island Bar and that I have an obligation

> to keep the responses to the questions therein current, complete and correct by the filing of timely Amendment to Application (form provided upon request) until the date of my taking the Oath of Attorney in Rhode Island."

Webb's notarized signature appears just below that acknowledgement in Section D of his bar application. Although the applicant takes issue with the committee's findings about the credibility of the police officers who testified and the lack of credibility and candor on Webb's part, we can perceive no evidence of an abuse of discretion on the part of the committee. Moreover, even if there were some question about the issues covered in the applicant's petition, there is a further issue that is dispositive, namely the previously undisclosed April 2, 2012 arrest for leaving the scene of an accident. The applicant was arraigned and given a court date of May 18, 2012. The applicant filed his petition with this Court on May 25, 2012—just one week later, and did not mention the arrest in it. In fact, he represented that he had "no issues with the Providence [p]olice since [his] 2006 arrest." It is true that this most recent arrest, in Providence, was made by the state police, but it strains credulity to believe that the applicant was not aware of the need to disclose that arrest.[2] This is a serious lapse, and it serves to underline rather than undermine the committee's conclusion that the applicant failed to meet his burden of proving his character and fitness to practice law as a member of the bar of this Court.

---

[2] In a letter accompanying his amendment, applicant said that his attorney "did not advise [him] that [he] was required to amend [his] application," that he "found no obligation to file an amendment" in Article II, Rules 3, 8 and 12 of the Supreme Court Rules of Admission of Attorneys and Others to Practice Law, and that he remained unaware of this obligation until he was so advised during oral argument. However, after signing Section D, applicant is charged with knowledge of the obligation.

## IV

## Conclusion

For the reasons stated above, the applicant's petition for admission to the bar of this state is hereby denied.


**TITLE OF CASE:**  In re Application of Floyd Edmond Webb, III.

**CASE NO:**  No. 2013-3-M.P.

**COURT:**  Supreme Court

**DATE OPINION FILED:**  January 11, 2013

**JUSTICES:**  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**  Per Curiam

**SOURCE OF APPEAL:**  N/A

**JUDGE FROM LOWER COURT**:

N/A

**ATTORNEYS ON APPEAL:**

For Applicant:  Floyd Edmond Webb, III

For Committee on Character & Fitness:  Patricia K. Rocha, Esq.